Erin K. Olson, OSB No. 93477
E-mail: eolson@erinolsonlaw.com
Law Office of Erin Olson, P.C.
2014 NE Broadway Street
Portland, OR 97232-1511
Tel: (503) 546-3150
Fax: (503) 548-4435
Attorney for Plaintiff

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y
★ NOV 22 2013 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
ROBIN SIMON FISCHER,

                Plaintiff,

    v.

INTERNATIONAL STUDENT EXCHANGE,
INC., a California Not-for-Profit Corporation;
STUDENT MANAGEMENT GROUP, INC. a
New York For-Profit Corporation; and
THEODORE R. PREISS, an Individual,

                Defendants.

---------------------------------------------------------------x

Civil Action No. CV 13 6519

COMPLAINT     WEXLER, J

Personal Injury and Breach of Contract Action
(28 U.S.C. § 1332(a)(2))

DEMAND FOR JURY TRIAL

LINDSAY, M

Plaintiff alleges:

## JURISDICTION AND VENUE

1.    This court has jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332(a)(2). The defendants are subject to the personal jurisdiction of this Court under Fed. R. Civ. P. Rule 4(e) under the nationwide service of process provisions.

2.    Venue is proper in this District under 28 U.S.C. Section 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in or emanated from this District.

**Page 1 - COMPLAINT (FISCHER V. INT'L STUDENT EXCHANGE, INC. *et al.*)**

## PARTIES

3.     Robin Simon Fischer ("Plaintiff") is an 18-year old male citizen of Grosskrotzenburg, Hessen, Germany. During all times relevant to the allegations herein, Plaintiff was a minor participating as a foreign exchange student in a secondary student Exchange Visitor Program.

4.     Theodore R. Preiss ("Preiss") is a 52-year-old male resident of Belgrade, Gallatin County, Montana.

5.     International Student Exchange, Inc. ("ISE") is a California not-for-profit corporation with a principal place of business at 119 Cooper Street in Babylon, Suffolk County, New York. At all times relevant, ISE was a designated sponsor of an Exchange Visitor Program approved by the United States Department of State and authorized to issue Certificates of Eligibility necessary to support applications for foreign exchange students to obtain the necessary visas to enter the United States. ISE's founder and chief executive officer was at all times relevant Wayne E. Brewer.

6.     Student Management Group, Inc. ("SMG") is a New York for-profit corporation with a principal place of business at 119 Cooper Street in Babylon, Suffolk County, New York. SMG's founder and chief executive officer ("CEO") was at all times relevant Wayne E. Brewer ("Brewer"). Upon information and belief, at all times relevant, SMG provided management and consulting services for designated sponsors of Exchange Visitor Programs, including ISE, and SMG was an agent of ISE acting within the course and scope of its agency in directing and facilitating the training and supervision of ISE's regional managers and area representatives. Additionally, upon information and belief, SMG was the alter ego of ISE, and exercised complete domination over all relevant acts of ISE through the companies' joint CEO, Brewer, which domination was for the purpose of insulating ISE from liability for its acts and omission

Page 2 - COMPLAINT (FISCHER V. INT'L STUDENT EXCHANGE, INC. *et al.*)

while preserving and protecting the profits of ISE's operations for the benefit of SMG's officers and shareholders. As a consequence of the foregoing agency and alter ego status, all actions and omissions alleged herein against ISE are attributable to SMG, and hereinafter, references to ISE include both ISE and SMG.

## COMMON ALLEGATIONS

7. In or before early 2011, Plaintiff contracted with a German company, Educational Consulting and Student Exchange ("EC-SE"), for placement as a foreign exchange student in the United States.

8. At all times relevant to the allegations in this complaint, EC-SE had a contract with ISE, the terms of which required ISE to locate and screen suitable host families in the United States for the placement of the German students who contracted with EC-SE, including Plaintiff, and to facilitate and supervise the placement of such students with the host families approved by ISE.

9. In approximately June of 2011, ISE enrolled Plaintiff as a participant in ISE's secondary school student Exchange Visitor Program, and in August of 2011, ISE approved Preiss's family as a host family and placed Plaintiff with the Preiss family in Belgrade, Montana.

10. ISE approved Preiss to serve as a host parent for Plaintiff, and delegated and assigned to Preiss the duty and responsibility of providing Plaintiff a comfortable and nurturing home environment. Plaintiff moved into the Preiss family home on September 2, 2011.

11. At all times relevant to the allegations herein, Preiss was an agent of ISE and was acting within the course and scope of his agreement and agency as a host parent.

12. At all times relevant to the allegations herein, Preiss was a trusted adult acting *in loco parentis* for Plaintiff, who was a minor from a foreign country for whom English was a second

**Page 3 - COMPLAINT (FISCHER V. INT'L STUDENT EXCHANGE, INC. *et al.*)**

language, and who was isolated from all his ordinary sources of protection and comfort, including family and friendship networks, while in Preiss's home.

13. ISE owed duties to Plaintiff to protect Plaintiff from foreseeable risks while he was enrolled in ISE's Exchange Visitor Program and away from his ordinary sources of protection. These duties included assigning an area representative or other agent to conduct regular in-person visits with Plaintiff while he was under ISE's sponsorship so that Plaintiff felt safe in reporting problems he was experiencing in his host family placement. Another duty included the duty to immediately report sexual abuse perpetrated against Plaintiff while Plaintiff was a participant in ISE's exchange visitor program, both to the U.S. Department of State and as required by Montana law.

14. On December 23, 2011, when Plaintiff was 16 years old, Preiss subjected Plaintiff to unwanted sexual contact by engaging in the following actions:

    a) Touching Plaintiff's intimate body parts, under the guise of "tickling";

    b) Touching Plaintiff's intimate body parts, including Plaintiff's chest, nipples, and penis, with his hands and mouth; and

    c) Performing oral sex on Plaintiff.

15. As a result of the sexual exploitation, sexual touching, and sodomy referenced in paragraph 14, Plaintiff has suffered and will continue to suffer physical and emotional pain, shame, confusion, embarrassment, shock, anxiety, avoidance, difficulty with concentration, diminished self-esteem and sense of security, disruption of life, and wounded trust in the intentions of others, all to his general damage in an amount determined to be fair by the jury not to exceed $1,000,000.

16. As a further result of Preiss's sexual exploitation and abuse as alleged in paragraph 14, Plaintiff has incurred and/or will incur costs for counseling and psychological treatment at an estimated cost of $15,000, and has incurred expenses associated with an additional year of school in an estimated amount of $1,500, the exact amount to be proven to a jury at trial.

## FIRST CLAIM FOR RELIEF — SEXUAL BATTERY

*Against All Defendants*

17. Plaintiff realleges and incorporates by reference paragraphs 1 through 16, above.

18. ISE encouraged Plaintiff and his family to trust Preiss, and sought and instilled in Plaintiff and Plaintiff's family that they were to respect Preiss's authority and guidance, and that Plaintiff was to comply with Preiss's instruction and requests.

19. ISE empowered Preiss to perform all duties of a host parent, including providing moral and ethical guidance to Plaintiff. ISE knew that as part of Preiss's duties as a host parent, Preiss would be in a position of power, trust, and confidence with Plaintiff and with Plaintiff's family.

20. For the purpose of furthering his assigned duties as a host parent, Preiss befriended Plaintiff, gained Plaintiff's confidence and trust as a moral guide and parental figure, and spent time alone with Plaintiff. These acts were performed, at least in part, to further Preiss's position as a host parent for ISE; were committed within the time and space limits of his role as a host parent; and were generally actions of a kind and nature that Pries was required and expected to perform as a host parent.

21. Preiss used the power, authority, access, and trust of his role as a host parent for ISE to gain the opportunity to commit the acts alleged in paragraph 14, and to commit those acts, and both Preiss and ISE are liable for those acts.

22. Preiss's sexual exploitation, sexual touching, and sodomy of Plaintiff as described in paragraph 14, above, was offensive and unwelcome to Plaintiff, as it would have been to a reasonable person, and Plaintiff did not consent to those acts.

23. As a result of Preiss's sexual exploitation, sexual touching, and sodomy of Plaintiff, Plaintiff has suffered the damages alleged in paragraphs 15 and 16, above.

24. Further, Preiss should be held liable in punitive and exemplary damages to Plaintiff for an amount not to exceed $1,000,000.00, because Preiss's acts of sexually exploiting, sexually touching, and sodomizing Plaintiff as described in paragraph 14 were outrageous, went beyond all bounds of decency, were outside any reasonable limit of social toleration, and reflected a conscious and flagrant disregard for the rights of Plaintiff.

## SECOND CLAIM FOR RELIEF — NEGLIGENCE

*Against Defendants ISE and SMG*

25. Plaintiff realleges and incorporates by reference paragraphs 1 through 23, above.

26. As the designated sponsor of the Exchange Visitor Program in which Plaintiff participated, ISE was in a special relationship with Plaintiff, which imposed upon them duties to protect his safety and welfare, including the duty to place him in a safe and stable living environment and the duty to provide reasonable measures to ensure his safety and welfare while living in the host residence. These duties are set forth in part in 22 CFR § 62.25, and included requirements that ISE and SMG:

   a. Adequately train their local coordinators in procedures for handling and reporting emergency situations;

   b. Adequately train their local coordinators in procedures for handling and reporting allegations of sexual misconduct;

**Page 6 - COMPLAINT (FISCHER V. INT'L STUDENT EXCHANGE, INC. *et al.*)**

    c. Adequately supervise their local coordinators;

    d. Maintain, at a minimum, a monthly schedule of personal contact with the exchange student;

    e. Provide exchange students, prior to their departure from their home countries, age and language appropriate information on how to report sexual abuse; and.

    f. Immediately report any allegation of sexual abuse to the U.S. State Department, and report such allegations as required by state law.

27. Additionally, as a member of Council on Standards for International Education Travel (CSIET), ISE had the following obligations for membership:

    a. Local representatives are to maintain regular personal contact with students and host families in order to maintain close supervision of them;

    b. Organizations are to ensure adequate care and supervision of students; and

    c. Organizations are to comply with all appropriate government regulations regarding international exchange or any other activity under its auspices, including 22 CFR § 62.25.

28. ISE was responsible for supervising and monitoring Plaintiff's stay in the Preiss home, including assuming the requirement to train and supervise the Area Representative and Regional Manager in Montana who were responsible for actually conducting the supervision and monitoring of Plaintiff and the Preiss family.

29. At all times relevant, the Area Representative and Regional Manager assigned by ISE to supervise and monitor Plaintiff's placement with the Preiss family and to fulfill the obligations set forth in paragraphs 26-28 were Ashley Pulsipher ("Pulsipher") and Carol Toews ("Toews"), respectively.

**Page 7 - COMPLAINT (FISCHER V. INT'L STUDENT EXCHANGE, INC. *et al.*)**

30.     At all times relevant to the allegations herein, Pulsipher and Toews were acting within the course and scope of their employment and/or agency with ISE.

31.     On the evening of December 23, 2011, Plaintiff requested a meeting with Pulsipher via e-mail advising her that there were private issues in the family that he urgently needed to discuss with her, in person, "as soon as possible."

32.     The morning of December 26, 2011, Plaintiff met with Pulsipher and reported to her that Preiss had sexually abused him the evening of December 23, 2011. Having had no meaningful training in the proper procedure for reporting the sexual abuse of an exchange student under her supervision despite ISE's obligation to provide such training, Pulsipher immediately notified Toews, her supervisor. Toews, instead of immediately reporting the sexual abuse the U.S. State Department or local authorities, called her corporate headquarters in Babylon, New York.

33.     The morning of December 27, 2011, and only after receiving instruction from "the NY offices of ISE," Toews contacted the Child and Family Services Division of the Montana Department of Public Health and Human Services and notified them of Plaintiff's report of sexual abuse.

34.     With Pulsipher's assistance and Toews' prior knowledge, Plaintiff left Montana the morning of December 27, 2011 to return to Germany.

35.     The afternoon of December 27, 2011, a manager of ISE's corporate office in New York notified the U.S. State Department of Plaintiff's report of sexual abuse.

36.     As a result of the delay by ISE's agents and employees in making the required reports of sexual abuse, Plaintiff was not interviewed by law enforcement until he returned to the United States, at his own expense, nearly a month later.

**Page 8 - COMPLAINT (FISCHER V. INT'L STUDENT EXCHANGE, INC. *et al.*)**

37. ISE was negligent in one or more of the following particulars:

    a. Failure to maintain regular personal contact with Plaintiff in order to maintain close supervision of him;

    b. Failure to provide reasonable means for Plaintiff to obtain assistance in the event of problems in Preiss's home;

    c. Failure to ensure that Plaintiff had and understood information on how to identify and report sexual abuse or exploitation;

    d. Failure to maintain monthly in-person contact with Plaintiff during his placement with Preiss;

    e. Failure to immediately investigate the safety and welfare of Plaintiff after Plaintiff reported urgent issues in the family and a need to meet with Pulsipher "as soon as possible"; and

    f. Failure to immediately report Preiss's sexual abuse of Plaintiff to the U.S. State Department and local authorities.

38. Plaintiff would not have suffered sexual exploitation and abuse by Preiss had agents or employees of ISE properly trained him in identifying sexual abuse or exploitation and made more frequent in-person visits to prevent Preiss from acquiring a level of confidence that his sexual exploitation and abuse of Plaintiff would not be reported.

39. Plaintiff would have insisted on an immediate report to law enforcement had he been adequately trained in the procedures for doing so and had ISE and its agents engendered his trust through regular personal contact.

**Page 9 - COMPLAINT (FISCHER V. INT'L STUDENT EXCHANGE, INC. *et al.*)**

40. As a result of the delay in the report of Plaintiff's sexual abuse to law enforcement, the criminal prosecution of Preiss was compromised, and notwithstanding law enforcement's request that Preiss be criminally prosecuted, the Gallatin County Attorney declined prosecution.

41. The negligence of ISE in supervising Plaintiff's placement resulted in Plaintiff suffering the sexual exploitation and abuse set forth in paragraph 14, above, and as a direct and proximate result of the aforementioned negligence, Plaintiff suffered the damages alleged in paragraphs 15 and 16, above.

42. The negligence of ISE and SMG in failing to properly train both Plaintiff and its agents in reporting sexual abuse to the U.S. State Department and authorities resulted in Plaintiff suffering additional emotional pain, shame, self-doubt, embarrassment, anxiety, avoidance, difficulty with concentration, diminished self-esteem and sense of security, disruption of life, and wounded trust in the intentions of others, all to his general damage in an amount determined to be fair by the jury not to exceed $1,000,000.

### THIRD CLAIM FOR RELIEF — BREACH OF CONTRACT

*Against Defendants ISE and SMG*

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 42, above.

44. Plaintiff was the intended beneficiary of the personal services contract between EC-SE and ISE, the terms of which involved the payment by Plaintiff and his family of money in exchange for arranging Plaintiff's placement with a safe and secure host family in the United States.

45. By accepting the terms of the contract to place Plaintiff with a safe and secure host family, and by assuming the responsibility for screening the host family and supervising Plaintiff's placement with that family, ISE was in a special relationship with Plaintiff, and ISE

was required to perform those terms and obligations with the utmost care to prevent the infliction of mental injury to Plaintiff.

46. Additionally, the express and implied statements set forth on ISE's website regarding the quality and components of ISE's program constituted warranties that became part of their contract for the benefit of Plaintiff, including warranties that:

   a) ISE would provide a safe host family for Plaintiff;

   b) ISE's Exchange Visitor Program adheres to the United States regulations set out in 22 CFR § 62.25;

   c) ISE's designation by the U.S. State Department as an official sponsor of the Exchange Visitor Program is "[i]ndicative of its high level of professionalism and respect within the foreign exchange industry";

   d) ISE is a member of CSIET and follows the standards established by CSIET;

   e) ISE would place Plaintiff in a home where he would be free from dangerous conditions, including sexual abuse; and

   f) ISE would carefully supervise and monitor Plaintiff's placement with the host family.

47. At the time of their entry into the contract for the benefit of Plaintiff, it was foreseeable to ISE that one likely consequence of failing to maintain frequent, personal contact with Plaintiff would be the vulnerability of plaintiff to abuse or exploitation by one or more members of his host family, and it was also foreseeable that a failure on the part of ISE to immediately report Plaintiff's sexual abuse to authorities could jeopardize the possibility of the criminal prosecution of the perpetrator. Thus, one of the purposes of the contract was to ensure that Plaintiff not suffer emotional damages and other mental injury brought about by abuse by members of the host family.

48.     ISE breached its contract of which Plaintiff was the beneficiary by placing Plaintiff in a home in which he was sexually abused, failing to property train him in how to respond to a threatened or actual act of sexual abuse, failing to properly respond to his stated urgent need to speak with ISE's agent, and failing to immediately report Plaintiff's sexual abuse to authorities so that a proper and timely criminal investigation could be undertaken.

49.     Plaintiff fully performed his contractual obligations, including full payment to EC-SE, attendance at all trainings and meetings required of him by EC-SE or ISE, and compliance with all other express and implied terms of his agreements with EC-SE and ISE.

50.     As foreseeable consequence of the breach by ISE of its contracts with EC-SE, Plaintiff suffered the harm and resulting damages alleged in paragraphs 14-16 and 42, above.

## DEMAND FOR JURY TRIAL

51.     Plaintiff herein demands a trial by jury.

## **PRAYER**

**WHEREFORE**, Plaintiff prays for the following relief:

1. On the First Claim for Relief for Sexual Battery against All Defendants:

   a. Non-economic damages in the amount of $1,000,000;

   b. Economic damages in the amount of $16,500;

   c. Punitive damages in the amount of $1,000,000 against Preiss; and

   d. Costs and disbursements incurred herein.

2. On the Second Claim for Relief for Negligence against Defendants ISE and SMG:

   a. Non-economic damages in the amount of $2,000,000;

   b. Economic damages in the amount of $16,500; and

   c. Costs and disbursements incurred herein.

3. On the Third Claim for Relief for Breach of Contract against Defendants ISE and SMG:

   a. Non-economic damages in the amount of $2,000,000;

   b. Economic damages in the amount of $16,500; and

   c. Costs and disbursements incurred herein.

4. For all other relief this Court deems just and equitable.

   DATED this 21st day of November, 2013.

                                         LAW OFFICE OF ERIN OLSON, P.C.

                                         _____
                                         ERIN K. OLSON, OSB No. 934776
                                         Attorney for Plaintiff
                                         2014 N.E. Broadway Street
                                         Portland, OR 97232-1760
                                         Phone: (503) 546-3150
                                         Fax: (503) 548-4435
                                         E-mail: eolson@erinolsonlaw.com